UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOSUE MARQUEZ AREVALO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 5:14-CV-415-HRW-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| RANDY WHITE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In 2007, following a jury trial, Petitioner Josue Marquez Arevalo was convicted of murder and sentenced to imprisonment for forty years. Petitioner appealed to the Supreme Court of Kentucky, which affirmed his conviction. *Arevalo v. Commonwealth*, No. 2007-SC-651-MR, 2008 WL 5051611 (Ky. Nov. 26, 2008). Petitioner then filed a motion for post-conviction relief under Kentucky Rule of Criminal Procedure 11.42, alleging multiple claims of error. The trial court denied his motion following an evidentiary hearing, and the Kentucky Court of Appeals affirmed. *Arevalo v. Commonwealth*, No. 2012-CA-2040-MR, 2013 WL 5603597 (Ky. Ct. App. Oct. 11, 2013). On September 10, 2014, the Supreme Court of Kentucky denied discretionary review. D.E. 23-2.

On October 17, 2014, Petitioner filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus seeking remand of his case back to the Kentucky courts and his immediate release. D.E. 1. His petition raises nine grounds for relief. For the reasons that follow, the undersigned **RECOMMENDS** that Petitioner's habeas petition (D.E. 1) be **DENIED** on the merits.

## I.  Factual Background

The Supreme Court of Kentucky summarized the underlying facts as follows:

> On March 14, 2006, Lexington Police responded to a call reporting a shooting at 828 Ward Drive.  The 911 call came from a neighbor named Juan Villa, who did not witness the shooting but heard the gunshots.  When the police arrived on the scene, they found that the deceased, Pedro Lilly, had been shot to death while seated in his car in his driveway.  An autopsy revealed that Lilly had been shot four times.

> At the scene, police encountered Carmella Arevalo, Lilly's paramour, repeatedly screaming, "Josue shot my Pedro" in Spanish.  Subsequently, during a recorded interview with Carmella, she stated that after hearing the gunshots, she looked out her door and saw her son, Josue Arevalo, running to his car.  Police questioned several other witnesses at the scene, none of whom claimed to have seen Josue or anyone else shoot Lilly.  However, three of these witnesses, Juana Lopez, Eduardo Cortez, and Sixto Roblero, testified that they saw Josue running and getting into his car after the shooting, although none of them saw him with a weapon.  An acquaintance of Josue, Matthew Robey, testified that in late 2005, Josue came to his house looking to obtain a gun.  Robey testified that Josue said he wanted a gun because he believed his stepfather had raped him when he (Josue) was drunk and had passed out.  Andrea Croom testified that Josue had asked her if she knew where he could get a gun because he "wanted to kill a Mexican."  Two other witnesses, Lynn Smith and Melissa Rogers, testified that Josue had told them that he was going to kill or hurt a "fucking Mexican."  Smith and Croom both stated that they saw Josue with a gun prior to the shooting that looked like the gun the prosecution claimed was the murder weapon at trial.

> In Josue's statement to police, he denied shooting Lilly and maintained that he was at his home on Race Street at the time of the shooting.  A search of Josue's home after the shooting revealed a gun and ammunition.  The fingerprints on the gun matched Josue's fingerprints, and the gun was determined to be the gun that fired the bullets recovered from the scene and from Lilly's body.

> On May 19, 2006, Josue Arevalo was indicted for the murder of Pedro Lilly.  Pursuant to a jury trial on July 23-24, 2007, Josue was found guilty of murder and sentenced to forty (40) years imprisonment.

D.E. 23-9 at 2-3.  On direct appeal, the Supreme Court of Kentucky affirmed his conviction.  *Id.* at 14.

Petitioner then filed a *pro se* motion for post-conviction relief under Kentucky Rule of Criminal Procedure 11.42 alleging multiple claims of error.  The trial court appointed counsel,

who filed a supplemental brief.  D.E. 23-8 at 1.  The supplemental brief alleged Petitioner was denied the right to competent counsel during the trial and sentencing.  *Id.*  The trial court overruled Petitioner's motion.  *Id.* at 6.  The Kentucky Court of Appeals affirmed, and the Supreme Court of Kentucky denied discretionary review.  D.E. 23-3;  D.E. 23-2.

In his § 2254 petition and supporting memorandum, Petitioner raises the following Grounds for relief, which are largely consistent with those raised in his state post-conviction petition:

1)	The Petitioner has been denied due process and equal protection of the law in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; as a result of the department of public advocacy's abandonment of the Petitioner's case after supplementing the pleadings, knowing the Petitioner was unable to speak or write English fluently.  D.E. 1 at 6-7.

2)	The Petitioner has been denied his Fifth, Sixth, Eighth, and Fourteenth Amendment rights to the United States Constitution and protected rights under international law by violations of Article 36 of the Vienna Convention on Consular Relations because the trial court, Lexington Police Department, and the Commonwealth of Kentucky, failed, and refused to inform the Petitioner of his protected right to request aide and assistance from the Mexican Consult.  *Id.* at 9-10.

3)	The Petitioner was denied due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as a result of ineffective assistance of counsel.  *Id.* at 11.

4)	The Petitioner was denied due process under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by the denial of evidence of actual innocence.  *Id.* at 13.

5)	The Petitioner was denied due process under the Sixth, and Fourteenth Amendments to the United States Constitution, when there were no gunpowder residue tests performed on the petitioner to determine whether or not he had fired a weapon.  *Id.* at 15.

6)	The Petitioner was denied due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when he was denied the right and services of a defense expert witness.  *Id.*

3

7)      The Petitioner was denied due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, when there was a lack of evidence to support a finding of guilt on the offense charged. *Id.* at 16.

8)      The Petitioner was denied due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, when the Commonwealth was allowed to use Ms. Carmella Arevalo's "Excited Utterance" as to the Petitioner being the shooter, when she had not witnessed the shooting and it was merely her "speculation"- especially since she knew of no motive the petitioner had to actually kill the "victim." *Id.* at 17.

9)      The Petitioner was denied due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as a result of cumulative error. *Id.* at 8.

On April 14, 2015, the Commonwealth, through counsel, filed a memorandum opposing Petitioner's § 2254 petition on the merits. D.E. 17. After a further review of the response, the Court determined that the Commonwealth's response brief was incorrect in that it presented an argument that did not apply to Petitioner. D.E. 20. On November 12, 2015, the Commonwealth filed a corrected response. D.E. 23. On December 8, 2015, Petitioner filed a reply to the corrected response. D.E. 26. The petition is therefore ripe for review.

## II. DISCUSSION

In general, a state prisoner has a statutory right to collaterally attack his conviction or sentence. *See West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001) (stating that 28 U.S.C. § 2254 provides state prisoners with a statutory right to file a habeas corpus petition). A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A petitioner must first exhaust his state court remedies before instituting a proceeding pursuant to 28 U.S.C. § 2254, unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a habeas petitioner must fairly present the

4

substance of his federal claims to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). This ensures that state courts, which have an equal obligation to protect the constitutional rights of defendants, "have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 275 (1971). All of the grounds for relief asserted by Petitioner herein were raised in his state collateral attack and therefore have been exhausted. *See* D.E. 23-6.

### A.  Standard of Review and Deference Due to State Court Decisions

The Court recognizes that Petitioner is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* petitions more leniently than petitions drafted with assistance of counsel. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). A document filed *pro se* is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398 (2011). All of the state court's factual findings are presumed to be correct, and can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003), *cert. denied*, 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. The Supreme Court has recently reiterated that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. ___, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks omitted). To meet this high bar, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The Court has also recently reiterated that "circuit precedent does not constitute clearly established Federal law." *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2155 (2012) (internal quotation marks omitted). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. ___, 135 S. Ct. 1372, 1376 (2015). Therefore, in general, the question before this Court is not merely whether the Kentucky Court of Appeals was incorrect, but whether it was so wrong its treatment of the law and facts was "unreasonable" under these stringent standards.

### B. Ineffective Assistance of Counsel

Several of Petitioner's Grounds for relief involve alleged ineffective assistance of counsel. An ineffective-assistance-of-counsel claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an ineffective-assistance claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

The Supreme Court has repeatedly commented on the interaction between AEDPA deference under § 2254(d) and *Strickland*'s standards of review. For example, in *Harrington v. Richter*, the Court emphasized that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id.* at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id*.

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Petitioner when it analyzed and denied his ineffective-assistance-of-counsel claims. D.E. 1-2 at 47.

### C. Petitioner's Grounds for Relief

*1. Ground One: Violation of Due Process Related to Counsel's Abandonment of the Case*

Petitioner's first Ground for relief relates to the withdrawal of the Department of Public Advocacy ("DPA") during his post-conviction proceedings. According to Petitioner, the DPA

represented him during the evidentiary hearing at the trial court level on his post-conviction motion.  D.E. 1-1 at 8-9.  Petitioner also alleges that he "was led to believe the DPA would handle his appeal."  *Id.* at 9.  However, he states that, after the DPA filed "all necessary appellate motions," the case was "transferred to the Post-Conviction Branch of the DPA, where the DPA filed a Motion to Withdraw, leaving the Petitioner-a non-English speaking Petitioner- to fend for himself."  *Id.*  According to Petitioner, because he is a "Non-English Speaking Foreign National, and is Indigent" his due process rights were violated by the DPA's withdrawal in this case.  *Id.* at 10.

The Court of Appeals of Kentucky addressed this argument in its opinion affirming the Fayette Circuit Court's denial of Petitioner's RCr 11.42 motion as follows:

> As his first basis for appeal, [Petitioner] argues that the Department of Public Advocacy (DPA) violated his right to counsel by withdrawing from this matter despite his difficulty with the English language.  We disagree.  Our United States Supreme Court has clearly held that there is no federal constitutional right to appointed counsel in state post-conviction proceedings.  *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).  Indeed, pursuant to Kentucky Revised Statutes (KRS) 31.110, the DPA is required to move for withdrawal in a post-conviction proceeding where there is a determination that the proceeding is "not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense."  KRS 31.110(2)(c).

D.E. 1-2 at 49.  Based on these findings and analysis, the Court of Appeals found that *"*the DPA complied with its statutory duty in withdrawing from representation" and affirmed the trial court's findings.  *Id.*

Petitioner's claim must be denied because the state court's decision was not an unreasonable application of clearly established federal law.  Simply put, Petitioner's argument that he was entitled to counsel during his post-conviction proceeding is incorrect.  As the Court of Appeals correctly stated, "[t]he Constitution does not guarantee counsel on [state] collateral review[.]"  *Brooks v. Bobby*, 660 F.3d 959, 965 (6th Cir. 2011) (citing *Finley*, 481 U.S. at 555).

The appointment of post-conviction counsel at the trial court level does not change this analysis. The Court of Appeals did not unreasonably apply clearly established federal law.

Petitioner argues that, despite this, the Court of Appeals "never addressed the 'totality' of the circumstances, and the known fact this Petitioner was a non-English speaking prisoner." D.E. 1-1 at 9.   However, he has provided no federal law to suggest that this entitles him to counsel during his post-conviction proceeding, and as he acknowledges in his reply, the "Supreme Court has never addressed an issue where the Petitioner is unable to speak or write English."   D.E. 26 at 5-6.   Petitioner cites to *Lewis v. Casey*, 518 U.S. 343 (1987), for the proposition that he has been denied access to the courts.   D.E. 1-1 at 9-10.   However there is no evidence to suggest that he has been unable to access the courts.   In fact, the record supports the opposite conclusion.   He has had full and unfettered access to the courts at each stage in his case.

Moreover, to the extent Petitioner alleges that his indigent status affects his right to counsel in this matter, he is incorrect.   The Court in *Finley* specifically found that an indigent petitioner does not have a right to counsel during a post-conviction proceeding.   *See Finley*, 481 U.S. at 555.   Petitioner has failed to show that the Court of Appeals decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).   Accordingly, this claim fails.

2.   *Ground Two:   Violation of Due Process Related to Alleged Violations of the Vienna Convention*

In his next claim for relief, Petitioner alleges that his rights under the Vienna Convention were violated.   D.E. 1 at 9-10; D.E. 1-1 at 11.   According to Petitioner, the Vienna Convention "bestows a private, judicially-enforceable right on Foreign Nationals to consult with Consular Officials."   D.E. 1-1 at 11.   He asserts that he "was not informed by the Police at the time of his

arrest that he had a right to contact the Mexican Consul and request legal assistance." *Id.* at 16. Moreover, he claims that "Trial Counsel, the Commonwealth Attorney, and the Trial Court all failed to properly notify and inform Petitioner of this right." *Id.* Therefore, Petitioner believes that his "conviction must be reversed." *Id.* at 11.

The Court of Appeals of Kentucky addressed this argument in its opinion affirming the Fayette Circuit Court's denial of Petitioner's RCr 11.42 motion as follows:

> As his second basis for appeal, [Petitioner] asserts an alleged violation of the Vienna Convention. More specifically, he alleges that the police, the trial court, and the Commonwealth failed to inform him that he could request aide from the Mexican Consulate. As noted, during the course of the evidentiary hearing below, [Petitioner] alleged that his attorney did not inform him that he could seek assistance from the Consulate, to which his attorney responded that he did not become involved in the case until the proceedings had reached the circuit court, by which time [Petitioner] had obtained private counsel.
>
> In reviewing this issue, we note first that this is a claim which [Petitioner] should have raised on direct appeal. Allegations against the police and the trial court are not the proper subject of an ineffective assistance of counsel claim pursuant to RCr 11.42. Our courts have repeatedly held that the failure to raise a claim in the appropriate forum must lead to denial of the claim. This includes claims made under the Vienna Convention. *Medellin v. Texas*, 552 U.S. 491 (2008).

D.E. 1-2 at 50. On this basis, the Court of Appeals affirmed. *Id.* The Commonwealth argues that, because the Court of Appeals found Petitioner's claim to be procedurally defaulted, this Court should not consider it. D.E. 23 at 16-17.

Federal courts will not consider procedurally defaulted claims on the merits, unless the petitioner can demonstrate cause for the default and actual prejudice, or that failing to review the claim would result in a fundamental miscarriage of justice. *Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006)); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Procedural default arises in two ways. The first way, not relevant here, is that "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review

11

procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)).

Second, applicable here, a Petitioner may procedurally default a claim by failing to conform to relevant state procedural rules in presenting his claim in state court.  *Id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).   To determine if a claim has been procedurally defaulted in this way, the Sixth Circuit has articulated a four-part test:

> (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).   "[A] procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case 'clearly and expressly states that its judgment rests on a state procedural bar.'"  *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).   Thus, "where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted."  *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009).   In order to be "adequate," "[a] state procedural rule must be 'firmly established and regularly followed[.]'"  *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007) (quoting *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004)).   Finally, "[a] state procedural rule is an independent ground when it does not rely on federal law."  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

Under Kentucky law, a defendant may file a post-conviction motion for relief from judgment within three years of the entry of final judgment.  Ky. R. Crim. P. 11.42.  "[RCr 11.42 motion] is limited to the issues that were not and could not be raised on direct appeal."  *Sanborn*

*v. Commonwealth*, 975 S.W.2d 905, 908-09 (Ky. 1998), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).   Here, a review of the record reveals, and Petitioner does not dispute, that he did not raise his Vienna Convention claim at trial or on direct appeal.   *See* D.E. 23-11.   Therefore, as discussed by the Court of Appeals, there is a state procedural rule applicable to this claim with which he failed to comply.   *See* D.E. 1-2 at 50 ("Our courts have repeatedly held that the failure to raise a claim in the appropriate forum must lead to denial of the claim.").   Moreover, it is clear that the procedural rule was enforced by the state court to foreclose review of Petitioner's Vienna Convention claim.   Further, Petitioner does not argue that the state procedural rule is not an adequate and independent state ground and the Court finds no reason to find otherwise.   *See Sanborn v. Parker*, No. 3:99 CV P678 C, 2005 WL 5190487, at *76 (W.D. Ky. January 12, 2005) (finding procedural rule an adequate and independent state procedural ground); *see also Brewer v. Bottom*, No. 10-26-KSF, 2011 WL 7168919, at *2 (E.D. Ky. 2011).   Finally, the Court notes that an alleged violation of the Vienna Convention is subject "to the same procedural default rules that apply generally to other federal-law claims."   *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 360 (2006).   Thus, the claim is procedurally defaulted.

Again, in cases in which a petitioner has defaulted his claims "pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   "The cause and prejudice standard is a two-part test in which the petitioner must: (1) present a substantial reason to excuse the default, and (2) show that he was actually prejudiced as a result

of the claimed constitutional error." *Martin v. Mitchell*, 280 F3d 594, 603 (citations omitted). The cause prong "requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise a claim in the state courts." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (quoting *McCleskey v. Zant*, 449 U.S. 467, 493 (1991)). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available." *Id.*

Therefore, "[i]n general, constitutionally ineffective assistance of counsel can constitute cause for procedural default." *Munson v. Kapture*, 384 F.3d 310, 316 (6th Cir. 2004) (citing *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994)). An attempt to use ineffective assistance as cause is governed by the *Strickland* standard. *Id.* Thus, Petitioner must establish *Strickland* deficient performance and prejudice. It should be noted that, while Petitioner must meet the deferential AEDPA standard with respect to any independent ineffective assistance of counsel claim, "he need not do so to claim ineffective assistance for the purpose of establishing cause." *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (citing *Fischetti v. Johnson*, 384 F.3d 140, 154-55 (3d Cir. 2004).

A showing of actual prejudice requires that a petitioner has the burden to at least demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Whenever a petitioner seeks to excuse his default on the ground of ineffective assistance of counsel, he necessarily, in order to establish ineffective assistance, must meet the *Strickland* prejudice standard. "[E]stablishing *Strickland* prejudice likewise establishes prejudice for the purposes of

cause and prejudice." *Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006) (citing *Mincey v. Head*, 206 F.3d 1106, 1147 n.86 (11th Cir. 2000)).   Thus, a showing of prejudice under *Strickland* satisfies the requirement of actual prejudice under the cause and prejudice analysis.

In his reply, Petitioner argues that he "had no say in the issues presented in Direct Appeal." D.E. 26 at 6-7.   Moreover, Petitioner asserts that "[n]ot only was he not consulted in regards to the issues raised; he was unable to read English, and therefore, unable to understand the issues raised." *Id.* at 7.   He states that "[n]o one explained the issues to the Petitioner," and that he has "been denied all Spanish Speaking Assistance in this Review[.]" *Id.*   While Petitioner does not specifically allege that this provides cause to excuse the procedural default, the Court will liberally construe his argument as two-fold.   First, Petitioner appears to argue that he was not in control of what issues were raised on direct appeal, and thus it was ineffective assistance for counsel to fail to raise the Vienna Convention issue.   Second, Petitioner asserts that because of his limited English, his procedural default should be ignored.

Each of Petitioner's arguments fail.   First, Petitioner is unable to assert this claim of ineffective assistance of counsel as cause for his procedural default.   A claim of ineffective assistance "must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)).   It is clear from a review of Petitioner's briefs filed in his state post-conviction proceedings, that Petitioner did not raise a claim of ineffective assistance of counsel as it relates to raising this claim on direct appeal.   *See* D.E. 23-4; D.E. 23-6.   Therefore, Petitioner may not use this ineffective assistance claim as cause for his procedural default.

However, assuming that Petitioner could assert this ineffective assistance of counsel claim, it would not be successful. Under Kentucky law, any argument based on a violation of his Vienna Convention rights would have been meritless. Article 36 of the Vienna Convention "provides that if a person detained by a foreign country 'so requests, the competent authorities of the receiving States shall, without delay, inform the consular post of the sending State' of such detention, and 'inform the [detainee] of his righ[t]' to request assistance from the consul of his own state." *Medellin v. Texas*, 552 U.S. 491, 499 (2008). The "'sending State' is the nation of the arrested foreign national, and the 'receiving State' is the arresting nation." *United States v. Emuegbunam*, 268 F.3d 377, 388 n.3 (6th Cir. 2001). While international treaties have the same effect as statutes, "[t]he Supreme Court has expressly declined to decide whether Article 36 of the Vienna Convention creates individual rights that are enforceable in domestic courts." *Loza v. Mitchell*, 766 F.3d 466, 499 (6th Cir. 2014) (citing *Medellin*, 552 U.S. at 506 n.4). However, the Kentucky Court of Appeals has determined that, as a matter of Kentucky law, "the Vienna Convention does not confer standing of an individual foreign national to assert a violation of the treaty in a domestic criminal case." *Gomez v. Commonwealth*, 152 S.W. 3d 238, 242 (Ky. App. 2004); *see also Rivera-Reyes v. Commonwealth*, No. 2005-SC-488-MR, 2006 WL 2986495, at *7-8 (Ky. 2006) (declining to overturn decision in *Gomez*).

Thus, Petitioner cannot establish that it was deficient performance or prejudice for defense counsel to fail to raise this claim of ineffective assistance on direct appeal because it would not have been successful. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 633, 676 (6th Cir. 2001)). This argument for cause based upon ineffective assistance of counsel fails.

Defendant's next assertion of cause that he is a native Spanish speaker and has limited English language capabilities also fails. Even assuming arguendo that this was sufficient to establish cause, Petitioner cannot establish actual prejudice because a violation of his rights under the Vienna Convention would not entitle him to habeas relief. Similar to Kentucky law, the Sixth Circuit has held that "the Vienna Convention does not create a right for a detained foreign nation to consult with the diplomatic representatives of his nation that the federal courts can enforce." *Emuegbunam*, 268 F.3d at 394. Therefore, even if Petitioner could establish cause for his procedural default on this theory, he cannot establish prejudice because he is not entitled to habeas relief in federal court on the ground that authorities violated his Vienna Convention rights.

If a federal prisoner is unable to show cause and prejudice, he may still be able to obtain review of his claims if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such as when the constitutional violation "has probably resulted in the conviction of one who is actually innocent." *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The basis for this actual innocence claim must be "new reliable evidence…that was not presented at trial." *Id.* at 324. "Petitioner bears the burden of proof on this issue by a preponderance of the evidence, and he must show not just that the evidence against him was weak, but that it was so weak that 'no reasonable juror' would have convicted him." *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000) (quoting *Dejan v. United States*, 208 F.3d 682, 686 (8th Cir. 2000)).

In Ground Four of his § 2254 petition and brief, Petitioner states that he was denied evidence of actual innocence.  D.E. 1 at 13; D.E. 1-1 at 24.  Petitioner does not claim actual innocence, either in his brief or reply, to overcome a procedural bar.  However, even if Petitioner is attempting to assert actual innocence as a way to over the procedural bar, he has not carried his burden to do so.  Petitioner's claim of actual innocence focuses on certain pieces of evidence that he claims establish "a reasonable probability…as to a different result in the trial proceedings." *Id.* at 25.  He alleges, among other things, that multiple individuals were seen fleeing from the scene, that no gun powder tests were performed on his person, that the victim had a criminal history, and that there were "turf wars" that were occurring in Mexico.  *Id.*

These conclusory allegations are not enough to meet his burden to establish actual innocence.  There was overwhelming evidence of Petitioner's guilt, most of which is not disputed by Petitioner.  Following the shooting, Petitioner's mother stated that he had shot the victim, and, during an interview with law enforcement, she stated she saw Petitioner running to his car following the gunshots.  D.E. 23-9 at 2.  Moreover, there was substantial testimony that Petitioner was seeking a gun in order to kill his stepfather, and that he had a gun prior to the shooting that resembled the murder weapon.  *Id.* at 2-3.  Finally, a gun was found in Petitioner's home that had Petitioner's fingerprints on it, and was determined to be the gun used to kill the victim.  *Id.* at 3.  Petitioner does not allege that any of the evidence he references in this claim is "new evidence," and, as discussed in more detail in the Court's analysis of Ground Four, most of the evidence was presented at trial.

Petitioner has not presented enough evidence to establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  **Therefore,**

because he has not established cause and prejudice, or that failure to review this claim would result in a fundamental miscarriage of justice, Petitioner's claim is procedurally defaulted.

### 3. Ground Three: Ineffective Assistance of Counsel

Petitioner's next ground for relief claims ineffective assistance of counsel. Liberally construing Petitioner's briefing, he alleges seven instances of ineffective assistance of counsel. First, Petitioner alleges that counsel was ineffective because he "never informed the Petitioner of his right to request aide and assistance from the Mexican Consult, or to inform the Petitioner of his protected rights under Article 36, of the Vienna Convention[.]" D.E. 1-1 at 21. Second, Petitioner alleges that "[c]ounsel never informed the Petitioner of his right to file post-conviction relief after his Direct Appeal was denied." *Id.* Next, Petitioner alleges that counsel was ineffective based on a failure to investigate a variety of issues. *Id.* at 21-22. Fourth, Petitioner alleges that counsel was ineffective because "[n]o attempt was made to locate, or obtain a Defense Expert Ballistics Witness- or even consult one to determine the need for one[.]" *Id.* at 22. Petitioner further alleges that counsel was ineffective during the sentencing phase of his trial. *Id.* at 23. Sixth, Petitioner alleges that all of counsel's errors had a cumulative effect and denied him effective assistance of counsel. *Id.* Finally, Petitioner alleges that counsel was ineffective for failing to inform him of his ability to testify in his own defense. *Id.* at 6.

The Court again notes the interplay between AEDPA deference under § 2254(d) and the *Strickland* standards of review. The Supreme Court has stated that both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under § 2254(d), "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and correctly allocated the burden to Petitioner when it analyzed and denied his ineffective assistance of counsel claims. *See* D.E. 1-2 at 47-54. Except where specifically addressed on a de novo basis below, the Court must grant full double-deference to the state court's decision under § 2254(d). Each claim will be considered in turn.

The court also notes, before considering any particular claim of ineffective assistance, that Petitioner informed the trial court that he was satisfied with the representation of his counsel. *See Video Record of Jury Trial Day 2, 07-24-2007, Disc 2 of 2, 14h04m28s*, at 1:12:03-21. He stated that his counsel had done all of the things he had requested of him. *Id.* Therefore, Petitioner's statements on the record at trial directly contradict some of the claims he pursues now.

### a. *Ineffective Assistance Relating to the Vienna Convention*

Petitioner's first claim of ineffective assistance of counsel again involves the alleged violation of his rights under the Vienna Convention. D.E. 1-1 at 21. Petitioner alleges that counsel was ineffective because he failed to inform the Petitioner of his right to contact the Mexican consulate. According to Petitioner, defense counsel "freely admitted" and "conjured up an excuse" for this failure. *Id.* Petitioner does not specifically describe the prejudice stemming from this alleged failure, but the Court presumes he means he would have requested the assistance of the Mexican Consulate had he known of the ability to do so.

The Court of Appeals of Kentucky addressed this claim as follows:

> First, concerning [Petitioner's] assertion that "greed" caused his counsel to fail to perform his duties under the Vienna Convention, we find no basis in the record to support this assertion and, moreover, do not find this to be a proper cause of action under RCR 11.42. The Vienna Convention does not guarantee defendants any assistance of counsel and, indeed, secures only the right of foreign

20

> nationals to have their consulate informed of their arrest or detention.  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349 (2006).

D.E. 1-2 at 51.  On this basis, the Court of Appeals affirmed the trial court.  *Id.*  Petitioner has failed to provide any factual or legal support for this claim.  Moreover, as analyzed previously, any assertion of his right under the Vienna Convention is not cognizable under state or federal law.  Accordingly, given the "doubly" deferential standard in this context, the Court cannot find that the Court of Appeals unreasonably applied Federal law.  This claim fails.

   *b.  Ineffective Assistance Based Upon Failure to Inform of Post-Conviction Rights*

   Petitioner's next claim of ineffective assistance of counsel is related to counsel's alleged failure to inform Petitioner of his ability to obtain post-conviction review with the assistance of appointed counsel.[1]  D.E. 1-1 at 21.  Specifically, Petitioner alleges that "[c]ounsel never informed the Petitioner he had the ability to request assistance from the Department of Public Advocacy[.]"  *Id.*  Moreover, Petitioner states that "[c]ounsel never informed the Petitioner of his right to file post-conviction relief after his Direct Appeal was denied."  *Id.*  According to Petitioner, this denied him "a fair and full opportunity to timely file for post-conviction review."  *Id.*

   The Court of Appeals affirmed the trial court's denial of this claim by first noting that Petitioner "does not have an unfettered right to either post-conviction review or to counsel for same."  D.E. 1-2 at 51.  Moreover, the Court of Appeals found that "a review of the record contradicts [Petitioner's] claim in this regard, as the record indicates that he was initially represented by a public defender during his post-conviction hearing."  *Id.* at 51-52.

---

[1] The Court notes that it is not clear at what point in his proceedings Petitioner is alleging he should have been informed that he had the right to court appointed counsel.  However, the Court of Appeals construed his argument as relating to appointed counsel on post-conviction review.  Given context in his brief, and the fact that he was represented at all levels of direct review, it is reasonable to construe his argument as relating to post-conviction review.

Here, the Court cannot conclude that the state court's denial of this claim was unreasonable. It is clear from the record that Petitioner timely filed a state court motion for collateral review. Moreover, Petitioner was represented by court-appointed counsel during his post-conviction review at the state trial court level. *See* D.E. 23-8 at 1. Accordingly, assuming that his factual allegations are true and counsel did not inform him of his post-conviction rights, Petitioner cannot possibly establish prejudice.

Further, the case law cited by Petitioner does not support his claim. In each of the cases cited by Petitioner, the Supreme Court of the United States dealt with the issue of ineffective assistance of counsel on collateral review and its effect on procedural default. *See Trevino v Thaler*, 133 S. Ct. 1911 (2013); *Maples v. Thomas*, 132 S. Ct. 912 (2012); *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Here, Petitioner does not argue that his appointed counsel on post-conviction review was ineffective, but that his trial/direct review counsel was inadequate. Therefore, the holdings of these cases are inapplicable to Petitioner's claim. Further, Petitioner does not attempt, in any manner, to describe how any of these cases support his claim. Thus, this claim fails.

   c. *Ineffective Assistance for Failure to Conduct Investigation*

Petitioner's next claim for ineffective assistance of counsel is related to his multiple allegations that counsel failed to investigate various aspects of his case. D.E. 1-1 at 20. Petitioner alleges that trial counsel "admitted he did not investigate defense issues" which according to Petitioner demonstrates that counsel failed to "place the Commonwealth's case in chief to a proper adversarial test." *Id.* Petitioner alleges that defense counsel should have investigated "the Coyote issue," a person in a yellow shirt, and "the threatening phone calls made to Lilly prior to his death." *Id.* Petitioner further alleges that counsel should have contacted

"Mexican Authorities to determine whether Lilly was a member of rival Mexican Factions then at war with each other-which could have led to his death." *Id.* Moreover, Petitioner alleges that defense counsel "never investigated 'alibi witnesses' because they did not conform to the Commonwealth's timeline of the case." *Id.* These witnesses include "the black couple that lived upstairs" and Petitioner's employer. *Id.* at 21-22.

The Court of Appeals found that Petitioner had failed to establish ineffective assistance of counsel. D.E. 1-2 at 52. Finding that the record established that defense counsel had performed an adequate investigation into Petitioner's case, the Court of Appeals concluded that defense counsel "could not have reasonably been expected to discern the identity of an unnamed 'black couple,' or even named members of a 'rival Mexican faction.'" *Id.* Therefore, the court affirmed the trial court's findings. *Id.*

Defense counsel testified at the state court evidentiary hearing regarding his investigation into Petitioner's case. Defense counsel stated that he did not try to locate Petitioner's neighbors because he believed that it would not be helpful to the defense. *See Video Record of Post-Conviction Hearing-August 16, 2012,* at 11:25-12:11.[2] According to defense counsel, "some of the things [Petitioner] had told [defense counsel] assisted the prosecution's timeline." *Id.* at 12:05-12:11. Defense counsel further stated that Petitioner's mother had confirmed to him that Petitioner was at the scene at the time of the crime. *Id.* at 12:13-19. Similarly, defense counsel testified that Petitioner's own statements about the time he got off work would have further confirmed the prosecution's timeline. *Id.* at 13:00-21. Thus, he stated that he did not investigate these two issues because talking to these people would only do harm to Petitioner's case. *Id.* at 13:22-28.

---

[2] Citation to the video record reflects the elapsed time on the video player, not the real-time timestamp displayed on the screen.

Moreover, defense counsel stated he remembered discussions he had with Petitioner and Petitioner's mother before trial about the "man in the yellow shirt." *Id.* at 15:23-37. However, based on these discussions, defense counsel was unable to determine any information that would enable him to investigate this man further. *Id.* at 15:38-53. Finally, defense counsel was asked about his investigation into the victim's criminal activity. Defense counsel testified that he was aware that the victim was allegedly a "coyote," whose job was to illegally smuggle people into the country. *Id.* at 17:38-18:00. In regards to the victim's gang activity, he testified that there was nothing that was "concrete" that he could look into, and thus he believed it would be "impossible to ascertain" any defense from these alleged gang connections. *Id.* at 18:02-19:20.

The Kentucky Court of Appeals found this testimony to reflect a reasonable investigative strategy. Petitioner's bare allegations, without more, do not meet his burden to establish that the determination by the Kentucky state courts was unreasonable. Based on the testimony of counsel, it is certainly reasonable to conclude that not investigating these issues was a reasonable investigatory strategy. Petitioner's statements to counsel regarding his whereabouts that day led counsel to believe that any further investigation into the matter would be unhelpful to the defense. Moreover, counsel had little to no information regarding either the alleged "man in the yellow shirt" or any specific information regarding the victim's alleged criminal activities for counsel to investigate. Simply put, the Court cannot conclude, based on this record, that the state court's finding that counsel performed an adequate investigation was unreasonable.

The Court of Appeals did not address whether or not Petitioner had established prejudice in this claim. *See* D.E. 1-2 at 52 (resting its decision on performance of counsel). When a state court only relies on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to the other prong. *See Rayner v. Mills*, 685 F.3d 631, 638

(6th Cir. 2012). Thus, "[t]he unadjudicated prong is reviewed de novo." *Id.* Here, the state court only relied on the deficient performance prong of the *Strickland* analysis. To further develop the record, the Court examines the merits of this claim under a *Strickland* prejudice analysis, de novo.

Petitioner has failed to provide any specific allegation as to how each uninvestigated aspect would have affected the outcome of the case. Therefore, he cannot establish prejudice. Specifically, Petitioner fails to describe what "the Black Couple who lived above the Petitioner" or his employer would have added to his defense. He alleges that by contacting Petitioner's place of work, defense counsel could have determined when petitioner got off work that day. D.E. 1-1 at 4. He further states that, by speaking to his neighbors, defense counsel could have determined "when [Petitioner] arrived at home the day of the shooting[.]" *Id.* at 21. Petitioner does not identify what evidence this investigation would have produced or how it would have helped him.

He does claim that an investigation would have determined if these witnesses would have provided an alibi. D.E. 1-1 at 21. This is not sufficient to establish that there is a reasonable probability that the outcome of the trial would have been different had counsel investigated this evidence. *See Strickland*, 466 U.S. 668, 694 (1984). Moreover, to the extent that Petitioner is asserting that counsel should have called these witnesses at trial, he must "[a]t the very least…submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense." *Talley v. United States*, No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must

generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Having failed to provide any such affidavits, or any specific allegations as to what these investigations would have revealed, this Court cannot make any assessment of any effect upon the outcome of the trial.

Similarly, Petitioner fails to specifically describe how any of the other issues, in light of the substantial evidence against him, would create a reasonable possibility to change the outcome of the case. The claims regarding the man in the yellow shirt and the victim's human trafficking ties have little factual support. Generally, he alleges throughout his filings that the victim was involved in some form of human trafficking and someone involved in this may have threatened or killed the victim. *See* D.E. 1-1 at 3, 6, 22-23; D.E. 26 at 11. Despite repetition of the statements, Petitioner has provided no factual basis or evidence for these allegations. He does not describe in any detail why he believes that the victim was involved in such activity. These mere allegations are simply not enough to carry Petitioner's burden.

Defense counsel is not required to investigate evidence to support claims that are frivolous in the face of overwhelming evidence. *See Johnson v. Kemp*, 759 F.2d 1503 (11th Cir. 1985). Again, there was overwhelming evidence of Petitioner's guilt, most of which is not disputed by Petitioner. Following the shooting, Petitioner's mother stated that he had shot the victim, and during an interview with law enforcement, she stated she saw Petitioner running to his car following the gunshots. D.E. 23-9 at 2. Three other witnesses also told police that they saw Petitioner running to his car following the gunshots. *Id.* There was substantial testimony that Petitioner was seeking a gun in order to kill the victim, and that he had a gun prior to the shooting that resembled the murder weapon. *Id.* at 2-3. Further, a gun was found in Petitioner's

home that had Petitioner's fingerprints on it, and was determined to be the gun used to kill the victim. *Id.* at 3.

In light of this overwhelming evidence of guilt, the Court cannot find that the state court's determination that defense counsel was not deficient in his investigation was unreasonable under the AEDPA. Nor has Petitioner established prejudice. This claim fails.

### d. Ineffective Assistance Related to Ballistics Expert[3]

Petitioner's next claim of ineffective assistance of counsel concerns his assertion that defense counsel should have obtained an expert witness to support his defense. D.E. 1-1 at 22. Petitioner states that "[n]o attempt was made to locate, or obtain a Defense Expert Ballistics Witness- or even consult one to determine the need for one[.]" *Id.* Petitioner argues that such an expert "would have allowed the Defense to present evidence of the non-existence of gunpowder residue tests on the alleged murder weapon, as well as the Petitioner, or the clothes the Petitioner had been wearing the day of the shooting." *Id.* According to Petitioner, tests like this were needed because "[f]inding 'prints' on the weapon fails to show the Petitioner fired the weapon." *Id.* Petitioner argues that this failure by counsel "failed to put the Commonwealth's Case In Chief to a proper adversarial test." *Id.* at 27.

The Court of Appeals of Kentucky addressed this claim as follows:

Concerning [Petitioner's] assertion that counsel failed to investigate the forensic aspects of his case through the use of experts, we note that Rapp was questioned on this issue below and testified that the passage of time rendered such an investigation impractical, and that it was his belief that inconclusive results as testified to by an expert would actually have done more harm to [Petitioner's] case than good. Our courts have repeatedly held that a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Hodge v. Commonwealth*, 116 S.W.3d 463, 469 (Ky. 2003). Hence, the defendant must

---

[3] The Court notes that this claim is largely identical to Petitioner's claims in Grounds Five and Six. *See* D.E. 1-1 at 26-29. Therefore, some of the factual allegations from those Grounds are considered here.

> overcome the presumption that counsel provided reasonable trial strategy. *Id.* In this instance, we do not believe that [Petitioner] has overcome that presumption, and we affirm.

D.E. 1-2 at 52-53. The Commonwealth urges this court to adopt the findings of the Kentucky Court of Appeals. D.E. 23 at 19-21.

At the state court evidentiary hearing, defense counsel testified that at no time did he obtain a ballistics expert. *Video Record of Post-Conviction Hearing-August 16, 2012,* at 13:38-43. He stated that there were "several reasons" he did not secure a ballistics expert. *Id.* at 13:43-44. The first reason was financial, as Petitioner could not afford to hire an expert witness. *Id.* at 13:44-48.[4]  The second reason, according to defense counsel, was because he believed that any such witness could have been used on cross-examination to provide support to the Commonwealth's case. *Id.* at 13:48-14:20. He believed that any gunpowder residue test would likely comeback inconclusive, that the ballistics matched "perfectly," and that fingerprint evidence was "beyond reproach." *Id.* at 14:01-26. He testified that he believed that any expert that could have been presented by defense could have been turned around and used to "bolster" the Commonwealth's case. *Id.* at 14:50-15:21. Thus, he did not believe any expert would be necessary.

.   "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence[.]" *Harrington v. Richter*, 562 U.S. 86, 106 (2011). "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Id.*  Defense counsel is

---

[4] Notably, Rapp was Petitioner's retained counsel. *Video Record of Post-Conviction Hearing-August 16, 2012,* at 10:14-11:04.

"entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 107.

Here, it cannot be said that the state court's finding that counsel was not deficient was unreasonable. Defense counsel testified that he made a decision to not employ any expert because he believed that any such witness could have been used to bolster the Commonwealth's case, and because Petitioner lacked the financial means to pay for such an expert. The state court found that this was a reasonable decision by trial counsel. Petitioner provides little to the contrary. He does not provide any proof that the opinion of either a gunshot residue (GSR) or ballistics expert would have been favorable to his defense. Moreover, he provides no factual allegations that a ballistics expert would have disputed the evidence that the gun found in his apartment was used to murder the victim.

Therefore, Petitioner has failed to demonstrate how employing either expert would have been favorable to the defense. Counsel's decision was within the wide range of reasonable professional assistance and the wide latitude defense counsel has in formulating sound trial strategy. Petitioner simply has failed to provide any reason for the Court to conclude that defense counsel was unreasonable in his decision making, and certainly has provided nothing to meet the doubly deferential standard of the AEDPA. Thus, the state court's finding as to this claim of ineffective assistance was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. Accordingly, this claim fails.

*e. Ineffective Assistance of Counsel during Sentencing*

Petitioner's next claim of ineffective assistance of counsel relates to the sentencing phase of his case. D.E. 1-1 at 23. He alleges that defense counsel "informed the jury Petitioner was an

illegal alien in voir dire; then never mentioned it during the Penalty Phase of the Trial[.]" *Id.*
Petitioner further asserts that defense counsel failed to assert "the fact the Petitioner would be
returned to Mexico no matter what sentence was imposed." *Id.* Moreover, he again alleges that
counsel should have brought up the victim's criminal activities, the man in the yellow shirt, and
the fact there was money owed related to "[the victim's] Criminal Enterprise." *Id.*

In his state post-conviction brief, Petitioner alleged that "counsel never attempted to
present mitigating evidence for a reduced sentence." D.E. 23-6 at 19. He also asserted an
argument that his illegal alien status and his mental history should have been brought up as
mitigating factors at sentencing. *Id.* at 10. This is slightly different than Petitioner's federal
filing, in that his federal filing does not include any mention of any mental issues.

The state courts, both at the trial and appellate level, denied this claim of ineffective
assistance and focused primarily upon the mental issue, without expressly addressing either the
illegal alien claim or any other witnesses that could have been presented.[5] *See* D.E. 23-8 at 5;
D.E. 1-2 at 54. The Court of Appeals of Kentucky addressed this claim as follows:

> Next, [Petitioner] asserts that counsel failed to present mitigating evidence. The
> record reveals this assertion to be without merit, as counsel did present mitigating
> witnesses at trial. Concerning the mitigation evidence that [Petitioner] asserts
> should have been presented, namely, that he had a head injury which presumably
> affected his behavior; counsel testified as to his belief that this could create a risk
> of [Petitioner's] being portrayed as a dangerous and unhinged individual who
> could not be rehabilitated. Finding this to be sound trial strategy, we decline to
> reverse on this basis.

D.E. 1-2 at 54. Although the state court failed to specifically address each aspect of this claim,
the Court still applies AEDPA deference to the claim as it is presumed that the state court
adjudicated the claim "on the merits." *See Harrington*, 562 U.S. at 99 ("When a federal claim
has been presented to a state court and the state court has denied relief, it may be presumed that

---

[5] The Court of Appeals did address a claim raised by Petitioner related to Petitioner's illegal alien status, but that
claim was not addressed within the context of Petitioner's sentencing. *See* D.E. 1-2 at 53.

30

the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").   Based on review of this claim, the Court cannot conclude that the state court's determination was unreasonable.

"As in the guilt/innocence phase of trial, failure even to investigate or present mitigating evidence at sentencing may constitute ineffective assistance of counsel."  *O'Guinn v. Dutton*, 88 F.3d 1409, 1424 (6th Cir. 1996) (citing *Glenn v. Tate*, 71 F.3d 1204, 1206-08 (6th Cir. 1995)).  A thorough investigation into possible strategies is required, "but 'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  *Frazier v. Jenkins*, 770 F.3d 485, 503 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 690-91).   Of course, even if deficient performance is established, Petitioner must establish that "had the jury been confronted with this mitigating evidence, there is a reasonable probability that it would have returned with a different sentence."  *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (internal quotations omitted).

Defense counsel testified at the evidentiary hearing about his mitigation strategy at Petitioner's sentencing.  He testified that he did not remember why he did not inform the jury during sentencing that Petitioner was an illegal alien, but that his mitigation strategy was focused on Petitioner's "humanity" through the testimony of Petitioner's mother and sister.  *Video Record of Post-Conviction Hearing-August 16, 2012,* at 22:27-24:14.  Defense counsel stated that his mitigation strategy was focused on trying to "humanize" the Petitioner during sentencing because he wanted to convey the message to the jury that Petitioner was a safe individual.  *Id.* at 31:19-32:09.  He testified that he avoided certain mitigation strategies, such as focusing on Petitioner's mental health, because he believed such a mitigation strategy ran the risk of "alienating" the jury because it would appear contrary to the defense during the guilt portion of

the trial.  *Id.* at 29:59-31:19.   Moreover, a review of the sentencing hearing confirms this mitigation strategy.  *See Video Record of Jury Trial Day 2, 07-24-2007, Disc 2 of 2, 17h29m00s,* at 4:49-7:35 (testimony of Petitioner's mother); *id.* at 8:36-11:08 (testimony of Petitioner's sister).  Defense counsel's questions to both witnesses focused upon Petitioner's work history, his family relationships, and whether the witnesses would let Petitioner back into their homes. *See id.*

The Kentucky Court of Appeals found this to be a reasonable mitigation strategy at sentencing.  *See* D.E. 1-2 at 54.  A review of the testimony from the evidentiary hearing and the testimony from the sentencing hearing itself reveals that this was a reasonable finding.  Petitioner asserts that defense counsel should have raised a variety of issues during sentencing such as his illegal alien status and his various claims of other evidence.  However, Petitioner's arguments are conclusory, and are not supported factually or legally.  Accordingly, he has failed to meet his burden to establish ineffective assistance of counsel.  Defense counsel's decision that any testimony at sentencing purporting to deny responsibility would not be beneficial to Petitioner appears to be an exercise of the wide range of reasonable professional judgment trial counsel has in formulating a mitigation strategy.  *See Frazier v. Jenkins*, 770 F.3d 485, 503 (6th Cir. 2014). Defense counsel was entitled to formulate a strategy that he believed would be most effective, and based on this record counsel was reasonable in doing so.

Giving the state court the double deference afforded under the AEDPA, the Court finds that its decision that defense counsel acted in a constitutionally effective manner relating to sentencing is a reasonable one.  Petitioner has failed to provide any legal authority or factual basis to establish that the state court acted unreasonably in reaching its decision.  Accordingly, this claim fails.

*f. Cumulative Error*

Petitioner's final listed claim of ineffective assistance is for cumulative error.  D.E. 1-1 at 23.  Petitioner argues that ineffective assistance of counsel should be considered in the totality of the circumstances and the Court should consider the cumulative effect of defense counsel's errors.  *Id.*  He asserts that "[t]he State ignores the cumulative effect, and attempts to use the item-by-item analysis- which has been clearly overruled."  *Id.*  Petitioner is arguing that all of counsel's errors, when considered together rather than separately, amount to ineffective assistance of counsel.

The Court of Appeals rejected this argument, "finding that none of the arguments made by [Petitioner] in support of the assertion that counsel was ineffective are merited, we do not find that [Petitioner's] cumulative error argument warrants reversal."  D.E. 1-2 at 54.  Citing *Brown v. Commonwealth*, 313 S.W.3d 577 (Ky. 2010), the court held that "where there are no errors and no prejudice from any alleged errors, there can be no cumulative error."  *Id.*  The Court of Appeals did not, however, expressly address the federal component of the Petitioner's claim, even though Petitioner raised one.  *See* D.E. 23-6 at 12 (petitioner asserting ineffective assistance of counsel under both the Federal and Kentucky constitutions).

Therefore, the question is whether, because the state court failed to expressly address this claim, AEDPA deference still applies.  As noted above, under AEDPA a court may grant a writ of habeas corpus if the state court's decision on the merits was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  By its language, 28 U.S.C. § 2254(d) is applicable only to habeas claims that were adjudicated on the merits in the state court.  *See id.*

Thus, if the state court did not assess a claim on the merits, AEDPA deference does not apply, and the claim is considered de novo. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004).

However, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The *Richter* presumption applies in situations in which "the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). "[W]hile the *Richter* presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable." *Id.* at 1096. Therefore, a federal court "must presume, subject to rebuttal, that the federal claim was adjudicated on the merits by the state court." *Olson v. Little*, 604 F. App'x 387, 390 (6th Cir. 2015) (citing *Johnson*, 133 S. Ct. at 1091).

The Court cannot conclude that the presumption has been rebutted as to this claim. First, the Court of Appeals included the federal *Strickland* standard before addressing any of Petitioner's ineffective assistance claims, including his claim for cumulative error. Second, Petitioner has made no argument that the state courts overlooked this claim, or that it is not entitled to deference. This furthers the conclusion that the *Richter* presumption applies. *See Johnson,* 133 S. Ct. at 1099 ("[Petitioner] presumably knows [his] case better than anyone else, and the fact that [he] does not appear to have thought there was an oversight make such a mistake most improbable."). Therefore, because Petitioner has not argued that the Court did not reach the claim on the merits, and because the Court of Appeals appeared to be considering Petitioner's ineffective assistance of counsel claims in the federal context, the *Richter*

presumption has not been rebutted.  Accordingly, AEDPA deference to the state court's decision applies as to this claim.

The Court cannot conclude that the state court's decision was an unreasonable application of Federal law.  If no individual claim of ineffective assistance has any merit, the Court cannot find that cumulative error rendered counsel ineffective.  *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Because the individual claims of ineffectiveness alleged by [Petitioner] are all essentially meritless, [Petitioner] cannot show that the cumulative error of her counsel rendered him ineffective.").  Thus, the state court's conclusion that Petitioner's claim of cumulative error had no merit was not an unreasonable application of Federal law.

### g. *Ineffective Assistance for Failing to Advise of Right to Testify*

In a portion of Petitioner's § 2254 petition that is separate from his ineffective assistance of counsel claims, Petitioner states that "[i]t was never explained to the Petitioner that he had a right to testify in his own defense, and to make that Decision himself."  D.E. 1-1 at 6.  This claim is also raised in his state post-conviction appellate brief.  D.E. 17-7 at 10 ("It was never explained to [Petitioner] he had a right to testify in his own defense, and to make that Decision himself.").  Construing Petitioner's brief liberally, the Court interprets this as a claim of ineffective assistance of counsel for failure to advise Petitioner regarding his right to testify in his own defense.  At no point, at either the trial or appellate court level, did the state courts expressly address this claim.[6]  *See* D.E. 1-2 at 23-28, 42-57.

Again, the question is whether, because the state court failed to expressly address this claim, AEDPA deference still applies.  As discussed above, this depends on whether the *Richter* presumption applies.  With respect to this claim, the Court cannot conclude that the presumption

---

[6]  The Kentucky Court of Appeals did state, in its statement of the facts, that defense counsel testified he "advised [Petitioner], with the aid of two interpreters, to waive his testimony and that [Petitioner] was advised of his right to testify by the Court."  D.E. 1-2 at 46.

has been rebutted.  First, the presumption is not rebutted if it appears the state court did not regard the claim as sufficient to raise a separate federal claim.  *See Johnson*, 133 S. Ct. at 1095 ("Federal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development…[s]tate appellate courts are entitled to follow the same practice.").  The claim here is particularly lacking in development.  At most, in both his state court and federal briefs, Petitioner's claim comprises two sentences.  Therefore, the state courts likely disregarded this claim as insubstantial and not adequately developed, rather than simply overlooking the claim altogether.

Second, Petitioner has again made no argument that the state courts overlooked this claim, or that it is not entitled to deference.  This supports the conclusion that the *Richter* presumption applies.  Therefore, because Petitioner has not argued that the Court did not reach the claim on the merits, and because the claim was not properly developed, the *Richter* presumption has not been rebutted.  Accordingly, AEDPA deference to the state court's decision applies as to this claim.

Turning to the merits of the claim, the state court's decision did not involve an unreasonable application of federal law, or an unreasonable determination of the facts.  Petitioner alleges that defense counsel "never explained to [Petitioner] that he had a right to testify in his own defense, and to make that Decision himself."  D.E. 1-1 at 6.  However, this allegation is directly contradicted by the record.  At the evidentiary hearing, defense counsel testified that he discussed the right to testify with Petitioner through two interpreters.  *Video Record of Post-Conviction Hearing-August 16, 2012*, at 28:41-29:05.  Defense counsel stated that he explained the right "fully," that the judge confirmed Petitioner's understanding of his right, and that he would have no reason to believe Petitioner did not understand the right.  *Id.* at 29:08-30.  A

review of the trial court record confirms defense counsel's testimony. The trial court fully advised Petitioner of his right to testify and he confirmed that he understood his right to testify. *See Video Record of Jury Trial Day 2, 07-24-2007, Disc 1 of 2, 12h34m48s,* at 9:10-38. The trial court asked Petitioner, "your attorney indicates to me that you do not wish to take the stand, is that correct?" *Id.* at 9:10-21. To which Petitioner confirmed that he did not wish to testify. *Id.* at 9:23-25. Moreover, Petitioner stated that he had had a full opportunity to consult with his attorney about his right to testify, and that it was his decision to not exercise his right. *Id.* at 9:24-38. Therefore, the record indicates that Petitioner was fully advised of his right to counsel and waived this right. He has provided no other evidence to suggest that this is an incorrect factual finding, let alone an unreasonable one.

It is clear that a defendant has a fundamental right to testify in his defense. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). This right must be "unfettered." *Harris v. New York*, 401 U.S. 222, 230 (1971). Where counsel makes a tactical decision to advise a defendant not to testify, "Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with his counsel." *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). "A federal court sitting in habeas review of a state court conviction should have 'a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client.'" *Wilson v. Winn*, Civil No. 2:12-CV-14597, 2015 WL 5999656, at *8 (E.D. Mich. Oct. 15, 2015) (citing *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009)).

Petitioner presents no argument or evidence to support his claim that defense counsel's performance was deficient. His acknowledgement in open court that he was aware of his right to testify and was waiving that right on the advice of counsel, gives rise to the presumption that

counsel was not deficient.  Therefore, the Court cannot conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.  This claim fails.

*4.  Ground Four:  Denial of Due Process by the Denial of Evidence of Actual Innocence*

Petitioner's next ground for relief is based on his claim that he was denied evidence of his actual innocence in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  D.E. 1-1 at 24.  Petitioner again alleges that there was not enough evidence to convict him of the murder of Lilly.  *Id.*  Moreover, he alleges that the jury should have heard evidence regarding the victim's criminal activity as a "coyote" and "warring Mexican Factions," and should have been presented with the results of ballistic tests that were not done.  *Id.* at 24-25.  According to Petitioner, had this evidence been presented, "'a reasonable probability' exists as to a different result in the trial proceedings."  *Id.* at 25.

This claim was presented to the Kentucky Court of Appeals which addressed it as follows:

> We now turn to [Petitioner's] fourth basis for appeal, wherein he argues that he was denied the opportunity to present evidence of actual innocence.  Upon review of the record, we simply find this argument to be without merit.  While [Petitioner] asserts that evidence was presented to indicate that there was an unknown person in a yellow shirt on the night of the crime, and that there had been threats against Lilly, who was a Coyote, we note that this defense was actually presented at trial.  Our review of the record reveals nothing to support [Petitioner's] assertion that he was prevented from presenting any evidence which would have supported his theory of the case.  While [Petitioner] argues that counsel should have discovered more evidence to support [Petitioner's] theory of the case, counsel testified during the course of the evidentiary hearing that there was nothing else to pursue.  Finding nothing in the record to indicate the contrary, we affirm.

D.E. 1-2 at 54-55.  The Commonwealth argues that Petitioner's argument should be rejected because it presented overwhelming evidence of Petitioner's guilt, and at no point was Petitioner denied the ability to present evidence of his innocence.  D.E. 23 at 21-23.  Moreover, the

Commonwealth asserts that Petitioner's "theory of the case" was actually presented to the jury. *Id.* at 21.

In this Ground, Petitioner appears to be making two separate arguments. First, Petitioner is arguing that he was denied the ability to present evidence of his innocence during his trial. Second, Petitioner is arguing that he is actually innocent of the crime. Petitioner has provided no basis for his argument that he was not able to present evidence of his actual innocence at trial. Assuming Petitioner is arguing that the state court's findings of facts were unreasonable as to this issue, he has failed to establish this claim.

It is true that, following the presentation of the Commonwealth's case, Petitioner did not present any evidence in his defense. However, he was afforded the full opportunity to do so, and each of the theories that Petitioner claims should have been presented were in fact argued by his counsel to the jury during closing. *See Video Record of Jury Trial Day 2, 07-24-2007, Disc 2 of 2, 14h04m28s*, at 16:59-17:19, 31:13-15 (discussing threats made to the victim); *id.* at 25:43-26:40, 31:10-12. (discussing the man in the yellow shirt). Petitioner cannot now argue that he was denied the ability to present these theories when in fact these theories were presented to the jury.

Also, to the extent he again alleges that counsel was ineffective for failing to investigate this evidence, he fails to meet his burden. As discussed extensively above, Petitioner has failed to establish that defense counsel was ineffective in any manner. Defense counsel testified that he had investigated Petitioner's theories as much as he could, given the little amount of information provided from Petitioner. *See Video Record of Post-Conviction Hearing-August 16, 2012*, at 15:23-53; 17:38-19:20. Moreover, he testified that the decision to not employ experts was based upon reasonable trial strategy as he believed it would do more harm to Petitioner's case than

good.  *Id.* at 13:47-14:30.  Finally, defense counsel developed each of these theories on cross-examination, and presented them to the jury during closing arguments.  Thus, counsel was not ineffective.

Second, to the extent that Petitioner is arguing that he is "actually innocent," this claim was discussed in detail above.  Given the substantial evidence that was presented against Petitioner at trial, and his failure to establish any new evidence that was not presented at trial, he has failed to prove that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Thus, he has failed to establish a claim of actual innocence.

Petitioner has not overcome the AEDPA deference due.  While it is true that Petitioner did not put on any evidence at trial, there is no indication that he was denied the ability to do so.  The theories Petitioner asserts should have been presented to the jury were in fact argued to the jury as alternate theories to the case.  Moreover, he has not demonstrated his actual innocence.  Thus, this claim fails.

5.   *Grounds Five and Six:   Denial of Due Process related to the Lack of Defense Expert Witnesses*

In Ground Five of his § 2254 petition, Petitioner alleges that he was denied due process because "there was [sic] no gunpowder residue tests performed on the Petitioner to determine whether or not he had fired a weapon."  D.E. 1-1 at 26.  He states that "numerous items were seized from [his] apartment" but no tests of these items were done.  *Id.*  He alleges that he specifically asked defense counsel to have the items tested but counsel refused.  *Id.* at 27.[7]

Similarly, in Ground Six of his § 2254 petition, Petitioner argues that he was denied due process because "he was denied the right and services of a defense expert witness."  *Id.*

---

[7] This argument is directly contradictory to Petitioner's statements made to the trial court immediately following his trial.  *See Video Record of Jury Trial Day 2, 07-24-2007, Disc 2 of 2, 14h04m28s*, at 1:12:03-21.

According to Petitioner, during his trial "'scientific evidence' was presented to the trial jury by the Commonwealth in the form of ballistics tests, and fingerprint analysis." *Id.* at 28.  Petitioner again claims that "[n]o attempt was made by trial counsel to obtain a defense expert witness to refute the claims made by this evidence[.]" *Id.*  Also in Ground Six, he further reiterates his claim that no gunpowder residue tests were completed.  *Id.* at 28-29.  Petitioner argues that the "state court decisions made light of this fact, and Supreme Court precedent on this issue, and the lack of evidence." *Id.* at 29.  Because both Grounds Five and Six are similar, the Court considers them together.

The Kentucky Court of Appeals addressed these claims by finding that these arguments were restatements of arguments made in Petitioner's claim of ineffective assistance of counsel. D.E. 1-2 at 55.  Therefore, the state court again found that trial counsel's strategy with regard to experts "was reasonable[.]"  *Id.*  Petitioner does not object to the state court construing these claims as ineffective assistance of counsel claims.  Moreover, he fails to demonstrate how these claims are any different than those raised in Ground Three asserting ineffective assistance of counsel.  Thus, the Court finds that the state court was reasonable in construing these arguments as claims of ineffective assistance of counsel, and does the same.

Applying the doubly deferential standard to the state court's decision, the Court cannot find that defense counsel's decision to not employ an expert constituted deficient performance. "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it."  *Harrington v. Richter*, 562 U.S. 86, 106 (2011).  Defense counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."  *Id.* at 107.  As analyzed above,

Petitioner has failed to establish that counsel was deficient in this regard.  The state court found that his decision to not employ an expert was part of reasonable trial strategy.  The Court cannot conclude that this decision was contrary to, or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Thus, these claims fail.

6.   *Grounds Seven and Eight: Denial of Due Process Based on a Lack of Evidence and Admission of Carmella Arevalo's Excited Utterance*

In his next Ground for relief, Petitioner argues that he was denied due process of law because "there was a lack of evidence to support a finding of guilt on the offense charged."  D.E. 1-1 at 29.  According to Petitioner, "there was a total lack of reliable evidence for the offense charged."  *Id.* at 30.  Petitioner again asserts that there was no "real" evidence that he committed the crime, and that the jury should have heard other items of evidence, such as the man in the yellow shirt and the victim's criminal activity.  *Id.*  He asserts that the gun was not "real evidence" because no gunpowder tests were performed, and that most of the evidence against him was hearsay evidence.  *Id.* at 30-31.  He asserts that the state must prove he committed the crime "with direct evidence, not 'some evidence,' as would suffice for a civil case."  D.E. 26 at 15.

In Ground Eight, Petitioner argues that his due process rights were violated when the excited utterance of Carmella Arevalo, Petitioner's mother, was allowed into evidence.  D.E. 1-1 at 32.  Petitioner argues that this excited utterance was introduced at trial through a 911 tape and the testimony of Officer Buenoto.  *Id.*  According to Petitioner, his mother never saw the shooting or him with a weapon.  *Id.* at 32-33.  He asserts that "because Ms. Arevalo's excited utterances were no more then [sic] speculation as to what occurred" he is entitled to habeas relief. *Id.* at 33.

The Kentucky Court of Appeals, in addressing both of these claims, found that:

> As his sixth basis for appeal, [Petitioner] argues that there was simply not enough
> evidence for the jury to find him guilty.  Essentially, this is an argument in favor
> of a directed verdict.  We note that this is an allegation which should be addressed
> through direct appeal.  As we have previously held, the RCr 11.42 procedure is
> not designed to give a convicted defendant an additional appeal or review of trial
> errors that should have been addressed on direct appeal.  *Commonwealth v.
> Basnight*, 770 S.W.2d 231, 237 (Ky. App. 1989).  This is also the case with
> respect to [Petitioner's] seventh basis for appeal, wherein he argues that the
> excited utterances made by his mother during the 911 call were hearsay and
> should not have been admissible.

D.E. 1-2 at 55-56.  On this basis, the Court of Appeals declined to consider both of these claims.

*Id.*  The Commonwealth argues that the Court of Appeals correctly enforced a state procedural

rule, and thus this Court should find these claims to be procedurally defaulted.  D.E. 23 at 24-26.

As previously discussed, a petitioner may procedurally default a claim by failing to

conform to relevant state procedural rules in presenting his claim in state court.  *Williams v.

Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986)).  To determine if a claim has been procedurally defaulted in this way, the Sixth Circuit

has articulated a four-part test:

> (1) whether there is a state procedural rule that is applicable to the petitioner's
> claim; (2) whether the petitioner failed to comply with that rule; (3) whether the
> procedural rule was actually enforced in the petitioner's case; and (4) whether the
> state procedural forfeiture is an adequate and independent state ground on which
> the state can rely to foreclose review of a federal constitutional claim.

*Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (citing *Maupin*, 785 F.2d at 138).  "[A]

procedural default does not bar consideration of a federal claim on habeas corpus review unless

the last state court rendering a reasoned opinion in the case 'clearly and expressly states that its

judgment rests on a state procedural bar.'"  *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.

2003) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).  Thus, "where a petitioner raised a

claim in the state court but in violation of a state's procedural rule, a state court must expressly

reject the claim on that procedural ground for the federal court to deem the claim defaulted."

*Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009). In order to be "adequate", "[a] state procedural rule must be 'firmly established and regularly followed.'" *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007) (quoting *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004)). Finally, "[a] state procedural rule is an independent ground when it does not rely on federal law." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

Here, Petitioner has offered no argument, in his § 2254 petition or reply, as to why his claims should not be construed as procedurally defaulted. Clearly there is a state procedural rule applicable to these claims which Petitioner has failed to follow. *See Commonwealth v. Basnight*, 770 S.W.2d 231, 237 (Ky. App. 1989) ("It is clear from our case law that the RCr 11.42 procedure is not designed to give a convicted defendant an additional appeal or a review of trial errors that should have been address upon the direct appeal. A trial error asserted in an RCr 11.42 motion must rise to the level of a constitutional deprivation of due process."). The Court of Appeals "clearly and expressly" stated that its judgment rested upon this state procedural bar. *Frazier*, 343 F.3d at 791. As a result, the state procedural default "carries over to federal court and precludes habeas review" of Petitioner's federal constitutional claims. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

Of course, procedural default may be excused if a petitioner, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, as analyzed above, Petitioner has failed to provide any argument as to cause and prejudice, and the Court cannot formulate one on his behalf. Further, any argument Petitioner asserts regarding actual innocence is meritless. Thus, this Court is barred from addressing these claims on the merits.

*7. Ground Nine: Cumulative Error*

In his last Ground for relief, Petitioner argues that he was denied Due Process as a result of cumulative error.  D.E. 1-1 at 33.  Petitioner asserts that "[n]umerous errors were commitetd [sic] throughout the Petitioner's case, both Pre-Trial, at Trial, and on Appeal- and throughout post-conviction review."  *Id.* at 34.  Petitioner again reargues his previous claims for error, and asserts that the "cumulative effect of the erros [sic] stated above substantially denied the Petitioner due process and a full and fair opportunity to present a defense to the allegations made."  *Id.* at 37-38.

The Kentucky Court of Appeals stated that "[b]ecause we have found that none of the errors alleged by [Petitioner] warrant reversal in and of themselves, we decline to review this argument further herein."  D.E. 1-2 at 56.  Thus, the Court of Appeals affirmed the trial court. *Id.*  Similarly, the Commonwealth argues that none of the issues that Petitioner raised were errors, therefore the Petitioner is not entitled to relief.  D.E. 23 at 26.

The Court is foreclosed from considering this claim because, post AEDPA, cumulative error is not a ground for relief under § 2254 in the Sixth Circuit.  *See Williams v. Anderson*, 460 F. 3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.") (citing *Moore v. Parker*, 425 F. 3d 250, 256 (6th Cir. 2005)).  "No matter how misguided this case law may be, it binds us."  *Id.* (citing *Turker v. Ohio Dep't of Rehabilitation and Corrections*, 157 F.3d 453, 457-458 (6th Cir. 1998)).  Accordingly, Petitioner's argument here cannot afford him any relief. This claim fails.

### III.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *See Slack*, 529 U.S. at 484.  None of Petitioner's claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under § 2254.  No reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.

### IV.  EVIDENTIARY HEARING

Petitioner requests that the Court conduct an evidentiary hearing on this matter.  D.E. 1-1 at 1-2.  Review under § 2254 is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Evidence introduced in federal court has "no bearing" on § 2254 review.  *Id.* at 185.  Thus, the Court may not consider any additional evidence in addressing the merits.

## V.  CONCLUSION AND RECOMMENDATION

Having reviewed each of Petitioner's grounds for section 2254 relief, the Court concludes that Petitioner has failed to make the requisite showing that would entitle him to any relief. Therefore, the Court **RECOMMENDS** that Petitioner's Petition for habeas corpus (D.E. 1) be **DENIED.**  The Court also **RECOMMENDS** that no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2254 Proceedings, Rule 8(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23rd day of February, 2016.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge